IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-07-105-2 |
| § | CIVIL ACTION NO. H-09-1082 |
| GERARDO VALDEZ § | |
| § | |
| § | |
| Defendant-Movant. § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Gerardo Valdez's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.114),[1] Movant's Addendum to his § 2255 Motion (Document No. 115), Movant's Motion for Leave to File Memorandum in Support of § 2255 Motion (Document No. 123) and Memorandum in Support of § 2255 Motion (Document No. 124), the United States' Answer (Document No. 125), and Movant's Reply to the Government's Response (Document No. 131). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that an evidentiary hearing be held on the issue of whether Movant was denied effective assistance of counsel due to his counsel's alleged failure to file a direct appeal. It is

---

[1] Gerardo Valdez's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-09-1082 and at Document No. 114 in Criminal Action No. H-07-105. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

FURTHER RECOMMENDED that Movant be appointed counsel to represent him at the hearing. Movant's Motion for Leave to file to a Memorandum in Support of § 2255 (Document No. 123) is GRANTED.

## I.   Procedural History

Movant Gerardo Valdez ("Valdez"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is Valdez's first attempt at § 2255 relief.

On March 21, 2007, Valdez and Juan Jose Villareal were charged by Indictment with conspiracy to distribute 1000 kilograms or more of marijuana in violation of 21 U.S.C.§§ 841(a)(1) & 841(b)(1)(A)(vii) and 846 (Count one), possession with intent to distribute a 1000 kilograms or more of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vii) (Count two), and aiding and abetting the possession with intent to distribute 100 kilograms of more of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) (Count three). (Document No. 8). On August 31, 2007, Valdez pleaded guilty to Count three pursuant to a written Plea Agreement. (Document Nos. 52, 55). According to the Plea Agreement, the penalty for Count three was not less than five years and not more than forty years. (Document No. 55, ¶ 2). Under the Plea Agreement, Valdez agreed to: (1) waive the right to appeal his guilty plea and his sentence, including the manner in which it was determined under 18 U.S.C. § 3742 (Document No. 55, ¶ 7), (2) make a full and complete disclosure of all assets used to facilitate the commission of the crimes alleged in the Indictment of which he might have knowledge (Document No. 55, ¶ 8), and (3) forfeit whatever interest he might have in any drug related asset, vehicle or trailer, for which Valdez owned or claimed an interest (Document No. 55, ¶ 8). The Government agreed to: (1) not to argue

for any "aggravated role" as defined in U.S.S.G. § 3B1.1 and not argue any "mitigating role" as defined by U.S.S.G. § 3B1.2 (Document No. 55, ¶ 3), (2) accept as an appropriate sentence one that is in the lower end of the sentencing guideline range (Document No. 55, ¶ 4), (3) not oppose a finding by the Probation Department that Valdez had accepted responsibility for his actions pursuant to U.S.S.G. § 3E1.1, and if such a finding is made, not object to a reduction in his sentence based on his timely plea. (Document No. 55, ¶ 5), and (4) dismiss Counts One and Two. (Document No. 55, ¶ 6). With respect to the calculation of Valdez's sentence, the Plea Agreement states in pertinent part:

> 9. The Defendant is aware that his sentence will be imposed in accordance with the <u>Sentencing Guidelines and Policy Statements</u> even though they are advisory in nature. The Defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty.
>
> 10. The Defendant is aware that a sentence has not been determined by the Court. The Defendant is also aware that any estimate of the probable sentencing range under the Sentencing Guidelines that the Defendant may have received from the Defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive.

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared (Document No.66, 68), to which Valdez filed written objections. (Document No. 58).[2] Valdez also filed a

---

[2] The docket sheet shows that Valdez filed written objections to the PSR. In particular, he attempted to correct ¶ 5 of the PSR wherein he was depicted as having tried to evade law enforcement in his vehicle. Valdez objected to the relevant conduct and his base offense level in ¶ 16, in which he was held accountable for the entire amount of marijuana seized at the ranch (6860 kilograms) instead of the amount seized in his vehicle (480 kilograms). According to Valdez, because his specific objective was to load and drive one van, under U.S.S.G. § 1B1.3(a)(1)(B), he should not have been held accountable for more. Valdez cited to the testimony at the Preliminary Hearing by ICE Special Agent that Valdez was not known by law enforcement prior to his arrest in the instant action, his name was not discussed on any audio records and he appeared on no video surveillance

Sentencing Memorandum. (Document No. 76).[3] The Government responded to Valdez's objections to the PSR and to his Memorandum in Aid of Sentencing. (Document No. 81). Pursuant to the PSR, Valdez's sentence was calculated as follows: (1) Valdez had a base offense level of 34 because he was held accountable for 6,860 kilograms of marijuana.[4] (2) Because Valdez accepted responsibility

---

to buttress his argument that this was an isolated event. Valdez further argued that he was not the registered owner of the property or lessee for any vehicle used and that his acceptance of responsibility statement made reference only to the one van. Based on Valdez's calculation, his base offense level should have been level 28. Valdez further objected to his role assessment in ¶ 19. According to Valdez, he should have received a two level downward departure for minor participant under U.S.S.G. § 3B1.2(b). The objection states:
> There is no evidence that the Defendant negotiated the transaction at the ranch, coordinated the participation of other co-conspirators, or rented any of the vehicles. His presence is not found on any audio or video surveillance; his name is not linked to the ranch. His role is clearly that of a mule — someone hired to take a shipment from one point to another.
> Only a mule in a multi-million dollar drug conspiracy would be sent out onto the street in a vehicle with bales of marijuana clearly visible through its windows.

Based on Valdez's calculation, with a Criminal History Category II, he had a sentencing range of 60 to 63 months. (Document No.58).

[3] The docket sheet shows that Valdez filed a Memorandum in Aid of Sentencing (Document No. 76), in which he argued the applicability of factors set forth in 18 U.S.C. § 3553(a) that support a sentencing departure below that of the advisory guidelines. In particular, Valdez noted his mitigating role in the offense. According to Valdez, his role was that of a "functionary who was used as a courier in one transaction. There is no proof that the Defendant did anything more than load and drive away with one shipment." Second, Valdez argued that as a deportable alien, he would suffer collateral consequences as a result of his alienage, namely, that he would not be eligible to serve his sentence in a minimum security facility and would not be eligible for release to a halfway house to serve the last part of his sentence. Valdez next argued that the Court should consider his substance abuse. According to Valdez, he had "three misdemeanor convictions related to substance abuse" and admitted to the Probation Officer that he had a chemical dependency with alcohol and marijuana. Finally, Valdez asked the Court to consider a combination of factors in calculating his sentence.

[4] Valdez's role in the offense was described in the PSR as follows:
3. Information pertaining to the offense was obtained from a review of the investigative reports of the Bureau of Immigration and Customs Enforcement (ICE), including two digital video discs (DVDs) containing photographs and aerial surveillance video; an interview of the case agent; and the United States Attorney's

file.

4. On March 3, 2007, surveillance was established at 12010 Martindale Street, Houston, Texas (the Martindale property) by law enforcement officers and agents of ICE, the Houston Police Department (HPD), the Harris County Sheriff's Office (HCSO), and Custom's and Border Protection's (CBP) Houston Air Branch. This parcel was approximately five acres of heavily wooded property that included several open air sheds and shelters for livestock and farm animals. Information had been provided by a confidential informant (CI) that this location was believed to be an off-loading and distribution point for shipments of drugs smuggled into the United States. Narcotics intelligence previously obtained from the CI and independent, investigative leads indicated that the buses and the property were used to conceal and transport thousands of pounds of marijuana at a time.

5. Ground surveillance was able to observe multiple vehicles entering the property and proceeding out of sight to the rear of the property. Aerial surveillance observed these same vehicles already on the property, backing up to the buses under the open air metal shed, and then moving to a different location on the property after several minutes. After a few hours of activity by several men in and around the metal shed and the school buses, at approximately 6:45 p.m, four of the vehicles departed from the property at the same time. Ground and aerial surveillance was focused on these four vehicles, some hauling trailers, and agents officers utilized lights and sirens to attempt to make stops of these vehicles. The drivers of these vehicles attempted to evade law enforcement, and began driving at high rates of speed.

6. The vehicle pursuits resulted in the arrests of Juan Jose Villareal and **Gerardo Valdez**. One of the vehicles evaded apprehension during the vehicle pursuits, and the other vehicle, a black Chevrolet pickup truck, was abandoned after aerial pursuit by the CBP helicopter. The Ford F-250 pickup truck driven by Villareal was pulling a utility trailer that was approximately 10 feet long, and emitted a pungent odor of marijuana after being stopped. Villareal gave verbal consent to law enforcement to search the trailer, and it was found to contain approximately 400 bundles of marijuana, each marked with the exact pound and kilo weight on the side. These bundles were subsequently determined to contain approximately 3,600 pounds (1,600 kilos) of marijuana.

7. The vehicle driven by **Valdez** was a red Dodge Caravan minivan, which had left in tandem with a black Chevrolet pickup truck. Agents following the Dodge minivan were able to observe bales of marijuana piled up to the ceiling through the vehicle's rear window. After **Valdez** stopped the vehicle, he rolled his window down and a strong odor of marijuana was emitted to the law enforcement officers standing nearby. After **Valdez** was removed from the minivan, it was found to contain the same

for his conduct, and did so in a timely manner, pursuant to U.S.S.G. § 3E1.1(a) & (b), his offense level was reduced by three levels.[5] (3) With an adjusted base offense level of 31, and with a criminal

---

> aforementioned bundles of marijuana, marked with the pound and kilo weight on the side, stacked from floor to ceiling and front to back of the inside of the vehicle. These bundles were subsequently determined to contain approximately 1,100 pounds (488 kilos) of marijuana. The black Chevrolet pickup truck which had left the Martindale property simultaneously with **Valdez** was abandoned in a nearby neighborhood after a pursuit, and the driver was not apprehended. That vehicle was found to contain approximately 1,200 pounds of marijuana (480 kilos).
>
> 8. Following the arrest of Villareal and **Valdez**, law enforcement secured the Martindale property. Additional bundles of marijuana were observed inside the school buses, from which the seating had been removed, and on the ground around them. There were also two white panel vans present which had been rented from Enterprise leasing in Houston. These vans were loaded front to back, floor to ceiling with bundles of marijuana, with an approximate content of 1,200 to 1,300 pounds of marijuana in each van. At the conclusion of their search, law enforcement had discovered and seized approximately 15,435 pounds (6,860 kilos) of marijuana, which includes the marijuana seized from Villareal and **Valdez.**
>
> 9. The investigation of this case has produced no information reflecting either Villareal or **Valdez** held an aggravating or mitigating role in the offense. Based upon the provisions of relevant conduct, each defendant appears responsible for the entire quantity of 6,860 kilograms of marijuana, as the quantity found on the Martindale property and in all of the vehicles located was reasonably foreseeable to each of them.

[5] According to the PSR, Valdez submitted the following statement in support of his request for a sentencing adjustment for acceptance of responsibility:

> My name is Gerardo Valdez, I am pleading guilty to Possession with Intent to Distribute 100 kilograms or more of marijuana. I wrote this statement and my lawyer has translated it for me.
>
> I would like to apologize to Judge Harmon for my role in this crime. I take full responsibility for my actions. I hope that Judge Harmon forgives me for my participation in this crime.
>
> I got involved in this offense when work was slow. I was applying for a job at a taco stand where someone named Jose asked if I wanted to make quick money. Jose called another man who picked me up and took me to get a rental van. I drove the rental van to a property. I helped load the van with the marijuana and then drove it off the property. I was stopped by police and arrested after that.

history category of II,[6] Valdez had a guideline sentencing range of 121 to151 months. Valdez was sentenced on April 11, 2008. (Document No. 84, Transcript of Sentencing Hearing, Document No. 89). With respect to Valdez's objections to the PSR based on his contention that he should not be

---

> My participation in this crime was a bad mistake. I was wrong to participate in drug dealing of marijuana and should have never gotten involved in driving the van. I want the Court to know that I will not do anything like this again. I do not speak with anyone involved in the crime. I will undergo any drug treatment or programs in prison that the Court wants me to take. If any money needs to be paid back to the government, I will try to pay it back.
>
> I would like to again apologize to Judge Harmon and also apologize to my family, the prosecutor, and the probation for my role in this crime.

[6] The PSR shows that Valdez had two criminal history points under U.S.S.G. § 4A1.1(c). The first was for an arrest on August 23, 2003, for which Valdez pleaded guilty and was sentenced to 15 days jail. As to the specifics of the offense, the PSR ¶ 27 states in pertinent part:
> According to the Houston Police Department offense report numbered 118999103A, on August 23, 2003, an officer, while on patrol, conducted a traffic stop on a vehicle he observed swaying from left to right and speeding. The officer also observed the vehicle strike the left curb. As the deputy approached the vehicle, he observed two males inside of the vehicle intoxicated. The officer observed the driver, later identified as the defendant, with a half empty bottle of beer between his legs. The officer also observed three cases of beer in the back seat. While the officer was searching the defendant, the officer discovered marijuana in a plastic bag. While being processed in jail, the defendant submitted to a breath test which yielded a blood alcohol content of .10. The net weight of the marijuana found on the defendant was 4.43 grams. The defendant was arrested and charged with driving while intoxicated and possession of marijuana. The defendant was arrested using the name Gerrardo Aguilar Valdez. He was also represented by counsel.

As to the second criminal history point, it was assessed based on Valdez's arrest on December 18, 2005, for possession of marijuana and for which he pleaded guilty and was sentenced to two days in jail. The PSR ¶ 29 states:
> According to the Harris County Justice Information Management Systems Summary of Facts, on December 18, 2005, an officer conducted a traffic stop on a vehicle which was driving at night without lights. The defendant was arrested for not having a drivers license or insurance. While the defendant was being searched, he was found to have three grams of marijuana. The defendant was arrested using the name Gerrardo Aguilar Valdez. He was also represented by counsel.

7

held accountable for the total drug quantity of the conspiracy and that he should be given an adjustment based on his minor role in the offense, his objections were overruled as follows:

> The Court: Okay. And Mr. Dahr has made some objections to the presentence report, which I will be going over with him in just a minute. But I want to find out if you have any objections to the presentence report that Mr. Dahr did not make on your behalf?
>
> The Defendant: No.
>
> The Court: All right. Now, the first thing that I have here is that you objected to a finding in the PSR that depicted Mr. Valdez trying to evade the law and the probation officer agreed with you on that; is that right?
>
> Mr. Dahr: Yes, ma'am.
>
> The Court: So that sort of takes away that one. They conceded that one.
>
> And you two have also objected to relevant conduct and the base offense level and role adjustment—
>
> Mr. Dahr: Yes, ma'am.
>
> The Court: — or role assessment, is that right?
>
> Mr. Dahr: Yes, ma'am.
>
> The Court: Do you want to give me a little argument on that or just rely on what you've written.
>
> Mr. Dahr: Well, just briefly, Judge, the first thing I'd like to point out, it seems like there's — just from Mr. Dies' response to my objections and to what I heard earlier– there seems to be some confusion about relevant conduct versus drugs in a conspiracy. We're not here to sentence him on a conspiracy. And what's relevant conduct is narrower than the amount of drugs that he can be held responsible for if this was a conspiracy. And when I parsed – I think I laid it out in my objections – but when you pars[e] the notes to get under the first acts aided by the defendant, the first prong that he could be held responsible under relevant conduct, it would have to be his specific objective to have helped unload the entire shipment. I raised that objection and then probation came back with, well, his specific objection doesn't – specific objective doesn't matter, it was still reasonably foreseeable. But the guidelines don't suggest that that's necessarily the case.

8

First of all, the note about the ship, the – it's about unloading an entire ship with several people. And the ship usually has a lot more — you kind of know that there's going to be a lot of drugs involved. And the note actually says that. Here what he's admitted to is going — he was going to be a courier for load and courier one van only. And then if you look at Note 7, which is specifically about what's reasonably foreseeable and what's not reasonably foreseeable, it says that your relevant conduct is limited to agreement and conduct. So if his agreement and conduct is to load and drive away with one van, then it's not relevant conduct to hold him responsible for the entire amount.

The Court: Okay. I understand what you're saying but I disagree and I'm going to overrule your objection.

Is that basically your argument in the role assessment also?

Mr. Dahr: Well, the role assessment is a little bit different. First, I want to point out Mr. Dies responded to my objections. As part of the plea agreement he said that he wasn't going to take a position about a mitigating role, but he did anyway. So I just – I want to put that on the record. It's the same argument that Mr. Shafer made. Basically he's hired to drive a load and drive away with one van. You've got a major drug conspiracy on two continents. This is just a driver for one load in that. And you can tell he was somebody who was sacrificed. How can you consider him someone vital or important as probation said when he's basically put in a minivan with bales of marijuana stacked high and then told to drive away. I don't think anyone who had been an average participant in a drug conspiracy would do that or be sent out ---- sent on to the streets like that. So I would still ask for a two-level adjustment for minor participant.

The Court: All right. Well, I don't believe he's a minor participant. I think he's an average participant, which the PSR found and I'm going to overrule that objection.

Having overruled all the objections to the presentence report, I adopt the presentence report as my own, both findings of fact and the application of the guidelines to the facts. I find a total offense level of 31, criminal history category of 2, which gives the guideline provision of 121 to 151 months.

Anything else?

Mr. Dahr: Judge, I'd just like to say, you know, if I can make a final argument.

The Court: Sure. Absolutely.

9

Mr. Dahr: Under 3553 you don't have to stick to the guidelines. This is basically the same factor as *Booker* and *Fanfan*. I just ask that because of the arguments I made about his mitigating role and the relevant conduct — if you don't want to consider them under the guidelines, you can still consider them under 3553. You know, the case law says you can look at the defendant's role. And for those reasons, I'd ask that if you don't want to take him under account of the guidelines, please take him under account under the statue.

And then it also says that you can look at the history and the characteristics of this defendant. He's someone with a third-grade education. It seems like he has a substance-abuse problem. Now, that's not an excuse for what happened, but it's still something that you can consider in mitigation under 3533.

The case law also says that you can look at his co-defendant's sentence of 70 months and that there shouldn't be too much of a gap between the two of them.

From the recommendation letters you have, it seems he's a hard worker, he's a family man, he has some construction skills. He does have a couple of arrests before but they're substance abuse related. You know, this is somebody who, after he dries out a little bit and maybe gets some counseling for substance abuse, won't be back in a courtroom again.

So if you don't want to do it under the guidelines, that under 3553 that you find his — that you would lower his sentence from what probation recommended.

The Court: Mr. Valdez, anything you would like to say before I pronounce sentence?

The Defendant: Your Honor, I ask forgiveness of the United States, of you, Your Honor, the assistant U.S. attorney, my parents. I'm very regretful.

The Court: Mr. Dies.

Mr. Dies: Yes, Your Honor.

First of all, as it regards counsel's placing on the record the agreement that the United States would not comment upon the role of the defendant, I point out two things, Your Honor, in my opinion, at any rate, as I have set out in writing.

Number one, I certainly believe it to be a violation of Rule 410 to include documents filed, discussions, communications involving plea negotiations, in my considered opinion.

>But I point out number two for the Court today in the record, that at Paragraph 19, Page 7 of that same agreement counsel refers to, whether the defendant has breached any provision of this plea agreement will be determined solely by the United States attorney whose decision in that regard is final. And in my opinion, by breaching Rule 410 and making arguments off the record, outside the record, the defendant through his counsel has breached the plea agreement.
>
>At any rate, Your Honor, I believe the record is sufficient for the Court to sentence the defendant to a particular punishment that is sufficient to meet the nature and offense involved, the situation, the defendant and the deterrence from no respect for the law as this defendant is situated, Your Honor.
>
>The Court: All right. Anything else before I pronounce sentence?
>
>Mr. Dahr: No, ma'am. (Transcript of Sentencing Hearing, Document No. 89, pp. 3-8).

Valdez was sentenced to a term of imprisonment of 121 months, to be followed by a term of supervised release of 5 years. Also, the Court imposed a special assessment of $100. (Document No.84, Transcript of Sentencing Hearing, Document No. 89, pp. 9-11). With the respect to Valdez's sentence, Judge Harmon stated:

>Gerardo Valdez comes before the Court for sentencing after having pled guilty to the offense of possession with the intent to distribute 100 kilograms or more of marijuana, aiding and abetting. The defendant is a 23 year old male who actively participated in the storing, packing and distribution of 6,860 kilograms of marijuana. Based on information from the case agent, the defendant's participation in the instant offense does not merit an aggravating or mitigating role adjustment. The offense is not Mr. Valdez's first conviction involving marijuana, but it is his first felony conviction. He has two prior misdemeanor marijuana convictions.
>
>Based on that information, it's my finding that a sentence at the low end of the advisory guideline range is appropriate. And pursuant to 18 United States Code, Section 3553A, the Court shall impose a sentence that reflects the seriousness of the offense and promotes respect for the law. (Transcript of Sentencing Hearing, Document No. 89, pp. 8-9).

Judgment was entered on April 23, 2008. (Document No. 90). On April 10, 2009, within one year of his conviction being final, Valdez timely filed a § 2255 Motion to Vacate, Set Aside, or Correct

11

Sentence (Document No. 114). A few days later, on April 13, 2009, he filed an Addendum to his § 2255 Motion (Document No. 115). In his § 2255 motion, Valdez raises claims of ineffective assistance of counsel. According to Valdez, his counsel rendered ineffective assistance when he failed to file a notice of appeal despite being told to do so by Valdez. In addition, Valdez alleges that his counsel rendered ineffective assistance of counsel when he failed to object to the statutory enhancement of his sentencing exposure, which was based upon facts neither admitted by Valdez nor proven beyond a reasonable doubt. Valdez further alleges that his counsel rendered ineffective assistance of counsel when he failed to object to prior convictions, which were used to enhance Valdez's sentence. According to Valdez, counsel should have objected to his being placed in criminal history category II, and that counsel's failure to object resulted in Valdez not being entitled to a sentence below the statutory minimum. Finally, Valdez contends that counsel was ineffective for not researching the law and investigating his personal characteristics, which counsel could have and should have argued under 18 U.S.C. § 3553 for a lower sentence. According to Valdez, counsel could have and should have requested a downward departure based on his personal characteristics or should have sought a reduced sentence based on the factors set forth in § 3553. Valdez has filed a Memorandum in Support of his § 2255 motion (Document No. 124), and has also responded to the Government's Answer. (Document No. 131).

The Government, in its Response (Document No.125) suggests that an evidentiary hearing be held with respect to Valdez's contention that counsel failed to file a direct appeal so that the Court will be in a position to make a credibility determination on this issue. The Government has submitted the affidavit of Fred Dahr, Valdez's attorney, in which counsel responds to Valdez's allegation that

he failed to file a direct appeal after being told to do so by Valdez. The affidavit states in pertinent part:

> My name is Fred Dahr, and I represented Gerardo Valdez in Cause No. H-07-105, in the United States District Court, Southern District of Texas.
>
> As for ground one in Mr. Valdez's 28 U.S.C. § 2255 motion, Mr. Valdez never asked me to file a notice of appeal. Prior to his plea bargain, we discussed on at least four occasions that as part of a plea agreement, he would have to waive his right to appeal the plea and sentence, and that an appeal when (sic) then become virtually impossible. The plea agreement signed by Mr. Valdez shows that he signed a waiver of appeal.
>
> After his sentence was determined, he asked me about trying an appeal; I reminded him of his waiver in the plea. During that discussion, I was never asked to file a notice of appeal.

Valdez was provided a copy of counsel's affidavit, which was attached to the Government's Answer. The docket sheet shows that Valdez responded directly to the Government's Answer and to the contents of the affidavit. (Document No. 131). According to Valdez, the transcript of the Sentencing Hearing supports his contention that he was interested in appealing, given that he inquired about an appeal.[7] Valdez contends: "[p]utting together, Petitioner's statements made to counsel and his

---

[7] The transcript shows the following exchange between Valdez, Mr. Dahr and the Court concerning this matter:

The Defendant: How long was I sentenced to?

The Court: 121 months.

The Defendant: But I can have an appeal?

The Court: Well—

Mr. Dahr: I will talk to him.

The Court: In the plea agreement you waived your right to appeal. But talk to your attorney about whether or not – I said that to the extent you haven't waived your right, you have a right to appeal. So talk to your attorney about that. Okay?

13

interest shown for an appeal at the sentencing hearing to the district court, his counsel being present, demonstrates under a fair preponderance of the evidence that he was interested in appeal, and that he requested an appeal." (Document No. 131, p. 5).

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that

---

The Defendant:  Very well.  (Transcript of Sentencing Hearing, Document No. 89, p. 12).

absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

As to Valdez's claim that he told counsel that he wanted to file an appeal and that counsel did not file said appeal, the law is clear that "[t]he failure to file a requested notice of appeal is ineffective assistance of counsel even without a showing that the appeal would have merit." *United States v. Alvarez*, (No. 04-40350), 172 Fed. App'x. 587, 589 (5th cir. 2006) (citing to *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The defendant need not show that an appeal would have been successful or even state the grounds on which he would have appealed. To establish prejudice, a defendant such

as Valdez must demonstrate only that there is a reasonable probability that but for counsel's failure to consult with him about an appeal, he would have appealed. *Flores-Ortega*, 528 U.S. at 486. This standard applies even in cases where a defendant has waived the right to appeal his conviction and sentence. *See United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The Fifth Circuit in *Tapp* held that an evidentiary hearing was required where the defendant's § 2255 motion alleged that counsel failed to appeal despite a request from the defendant to do so. *Tapp*, 491 F.3d 263.

Here, the docket sheet shows that a Notice of Appeal was not filed, either *pro se* by Valdez or by counsel. In addition, the docket sheet shows that counsel did not file a Motion to Withdraw or an *Anders* brief.[8] Based on this record, which consists of Valdez's sworn § 2255 motion and the affidavit of counsel, which contradicts his allegations, and because the United States has requested an evidentiary hearing, the undersigned Magistrate Judge recommends that an evidentiary hearing be held to assess the credibility of the parties on this issue, namely, whether Valdez can demonstrate by a preponderance of the evidence that he actually instructed counsel to file an appeal, *Tapp,* 491 F.3d at 266 and, if not, whether he consulted with counsel about an appeal. The Supreme Court in *Flores-Ortega* wrote:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal...If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable

---

[8] Under the holding of *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court outlined the steps counsel should take when seeking to withdraw from representing a criminal defendant on appeal. According to *Anders*, counsel must conduct a "conscientious examination of the case before seeking permission to withdraw from a case. That request must be accompanied by a brief to the appellate court referring to anything in the record that might support the appeal." *Id.* Then, the appeals court reviews the record to determine whether the case is "wholly frivolous." *Id.*

> manner only by failing to follow the defendant's express instructions with respect to an appeal...If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*See Flores-Ortega*, 528 U.S. at 478. "Consult" in this context means that counsel advised the defendant about the advantages and disadvantages of an appeal and made a reasonable effort to discover the defendant's wishes. *Id*. That said, failure of counsel to consult his client about appellate rights does not, in and of itself, establish ineffective assistance of counsel. According to the Supreme Court, the following test applies to determine whether counsel has a constitutionally imposed duty to consult with a defendant about a potential appeal: whether there is a reason for counsel to think either (1) "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)" or (2) "that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. In making this determination the court looks at the totality of the circumstances regarding the information counsel knew or should have known. *Id*. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*. In addition, even if counsel violates the duty to consult about an appeal, a defendant must still demonstrate prejudice, i.e, "had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id*. at 486. Until this issue is resolved, no further recommendations can be made concerning the merits of Valdez's other claims.

**V. Conclusion and Recommendation**

Based on the foregoing, it is

RECOMMENDED that an evidentiary hearing be held on the issue of whether Movant Gerardo Valdez was denied effective assistance of counsel due to his counsel's alleged failure to file a direct appeal. It is further RECOMMENDED that Movant be appointed counsel to represent him at the hearing. *See* Rules Governing Section 2255 Proceedings 8(c). Counsel should be appointed by separate order. The Magistrate Judge further RECOMMENDS that should Movant prevail on his ineffective assistance of claim, namely that counsel failed to file an appeal, that he be given an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001) (where movant was denied ineffective assistance of appellate counsel, judicial remedy is to grant out-of-time appeal), and that the Clerk should be directed to reinstate Movant's criminal judgment. *See West*, 240 F.3d at 459 ("when leave to file an out-of-time appeal is granted, the district court should *reinstate* the criminal judgment to trigger the running of a new Rule 4(b) appeal period.") (emphasis in original). In addition, should the Court determine that Movant is entitled to an out-of-time appeal, Movant's § 2255 Motion should be DISMISSED WITHOUT PREJUDICE. *See West*, 240 F.3d at 460 (clarifying that "part of the procedure for granting an out-of-time direct criminal appeal is dismissing the § 2255 motion without prejudice"); *United States v. Joubert*, 273 F.3d 1099 (5th Cir. 2001) (vacating the district court's grant of § 2255 relief and remanding with instructions for district court to dismiss the § 2255 motion without prejudice and to reenter its sentencing judgement so that the defendant could pursue an out-of-time appeal). In the alternative, should the Court conclude that Movant is not entitled to an out-of-time appeal, the matter should be referred back to the undersigned Magistrate Judge for a Memorandum and Recommendation.

It is further ORDERED that Movant's Motion for Leave to file Memorandum in Support of § 2255 Motion (Document No. 123) is GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 27th day of October, 2009.

*[signature]*
Frances H. Stacy
United States Magistrate Judge